The next case of the morning is number 2560394, Tuang v. Blanche. Ms. Taylor. Good morning, Your Honors. Thank you, and may it please the Court, my name is Elena Taylor, and I represent the petitioner, Pao Thanh Tuong. You need to speak up a little bit, please. Yes, Your Honor. The immigration judge properly granted Mr. Tuang protection under the Convention Against Torture based on his testimony about what happened to him in the past, and the evidence that he supplied in support of the fact that this could happen to him again today. The Board of Immigration Appeals improperly reversed this decision for three primary reasons. First, the Board of Immigration Appeals improperly applied a de novo standard of review, rather than a clear error standard of review to the facts found by the immigration judge. Secondly, the Board of Immigration Appeals decision was not supported by substantial evidence. And finally, if the IJ did, in fact, clearly err in her fact finding, the Board of Immigration Appeals erred by not remanding that case back to the immigration judge to correct these errors. Turning to my first point, the Board of Immigration Appeals improperly applied a de novo standard of review to the record, rather than reviewing the immigration judge's findings for clear error. The Board of Immigration Appeals is bound to review findings of fact made by the immigration judge for only clear error. This Court has found that its own regulations support that, and its own case law supports that. This Court has found that the Board of Immigration Appeals engages in de novo review, rather than clear error review, when it does not rely on information relied upon by the immigration judge, does not consider that information relied upon by the immigration judge, makes new findings of fact, reweighs evidence in the record, and picks a different plausible reading other than the plausible reading made by the immigration judge. I have some primary examples of the Board engaging in this fact finding, rather than engaging in clear error review. So first, on the first page of the Board of Immigration Appeals decision, which is at Record of Appeal, page three, I believe, the immigration judge had made these details findings a fact that the Board restated, basically, that the petitioner would be encountered at the airport, would be forcibly recruited for military service, and would thereafter be tortured. The Board of Immigration Appeals restated these findings, and then concluded each hypothetical link in the chain of events is not more likely than not to occur. This is a new predicted fact that the immigration judge did not make. The Board of Immigration Appeals didn't say that these findings were clearly erroneous. It just made a new fact finding. Well, they did cite the right standard of review. Correct, Your Honor. But it's not sufficient for the Board of Immigration Appeals to simply cite the correct standard of review. It must actually apply the correct standard. This Court has noted as much in Alvarado de Rodriguez v. Lee Folder, who was the Attorney General at that time. And the Board of Immigration Appeals did not actually apply that correct standard of review. The Board made a similar error by stating that the evidence Well, why do you say it's de novo to say the evidence does not support that it is more likely than not that the respondent would not only be conscripted in the military service, but would be given dangerous assignments or mistreated? Yes, Your Honor. The Board of Immigration Appeals in that finding engaged in de novo review of the record because they didn't acknowledge or consider the immigration judge's findings or the information relied upon by the immigration judge. The immigration judge found that based on the evidence of record, including the Department of State reports, the petitioner's own testimony, that these types of things would happen to him. And the Board of Immigration Appeals didn't Well, the petitioner's and his brother's testimony was based on things that occurred, what, 15, 20 years ago? Yes, Your Honor. But it's still relevant information that the Board of Immigration Appeals didn't cite to or consider or reference at all. The BIA is not, the IJ, as I understand it, is supposed to, you know, lay out all the relevant facts. The BIA reviews the facts, right? So why isn't, why is it necessarily de novo to say? And then it's up to both parties to argue whether it's clear or not when the BIA said the evidence does not support. Your Honor, the Board of Immigration Appeals engaged in de novo review because it didn't consider the evidence relied on by the immigration judge or say why the immigration judge's determination based on this evidence was clearly erroneous. I think it's, to me, it's more a question of articulation. How much do they have to articulate to say we find this clearly erroneous? Your Honor, the Board of Immigration Appeals is permitted, obviously, to find that things are clearly erroneous, but they need to identify what exactly is clear error. They can't just pick and choose and reweigh the evidence in the record differently than the immigration judge weighed the evidence in the record. The immigration judge properly weighed the evidence in the record, identified particular gaps, but concluded and made proper inferences on the record evidence that the petitioner was more likely than not to be both recruited and then tortured. The Board of Immigration Appeals discounted this evidence in multiple fashions. For example, the Board of Immigration Appeals found that evidence from, discounted evidence from so-called activists and researchers and said that that was not objective evidence, but the immigration judge relied upon the Department of State report that cites these things are happening, and that's a clear example of the Board of Immigration Appeals reweighing the evidence of record to make different, to assign different weight to evidence than the immigration judge properly assigned weight to this record. Additionally... They might torture him because he was, had raped and sodomized a minor. Your Honor, I understand... I don't know how that figures in immigration law, but the so-called Christian... Your Honor, for cases under the Convention Against Torture, the petitioner's criminal record is irrelevant to the case. It is a non-discretionary mandatory relief if the petitioner shows that this likelihood of harm. Additionally, a grant of CAT in this case doesn't prevent the government from deporting the petitioner to a different country. The petitioner is not entitled to remain in the United States with this criminal record with a grant of CAT. It simply prevents the government from deporting him to this specific country where he was granted protection to. And this government, frankly, has shown its ability to deport people to other third countries and numerous occasions where people have been granted protection under the current circumstances. Additionally, though, the Board of Immigration Appeals also engaged in improper fact finding where they stated that the military drafted just 60,000 of 14 million people and used that to determine it was not more likely than not that the petitioner would be more likely than not to be tortured. This finding is erroneous in two primary reasons. First, the Board of Immigration Appeals misapprehended the standard for protection under the Convention Against Torture. The petitioner is not required to show that half the population would be tortured. He's only required to show that he's more likely than not to be tortured. And the immigration judge considered the likelihood of harm to the petitioner by considering the context in the record, such as the fact that ethnic minority groups are being specifically targeted for recruitment. That's that ROI. Recruitment is not torture. Recruitment alone is not torture, Your Honor, but it is a step in the chain to lead to the conclusion that the immigration judge did properly consider when laying out, under matter of JFF, a certain link of chain, link of events in the chain of what is more likely than not to happen to the petitioner. And so, for example, another factual finding engaged in by the Board of Immigration Appeals is that, I believe we did touch on this already, but that the evidence does not support the conclusion that the petitioner would be given dangerous assignments. The evidence does not show any different treatment in the military. The immigration judge relied on evidence, found that because of the military's mistreatment of minorities, there's record evidence, for example, at ROA 652, 699 to 700, that there's the use of Chin ethnic minorities for quartering in human shields. The immigration judge relied on this record evidence, and the Board of Immigration Appeals reweighed the evidence and came to different conclusions. Now, they said this is not clear error, clear error, because it is very unlikely, insufficient, does not support conclusions. Your Honor, but the immigration judge assigned proper weight to this evidence in the record, and there's nothing in the record that disputes the findings of the immigration judge. This isn't a case where there's hundreds of pages of evidence that says, actually, this person is not going to have this happen to him. This is a case where the immigration judge made proper inferences from the record evidence. The evidence that supports this is undisputed, and the immigration judge found it is more likely than not that each hypothetical link in the chain is more likely than not to occur, and the Board of Immigration Appeals went in and reweighed this evidence and came to a different conclusion. The Tenth Circuit has stated recently in a case that is on point here, that's Ramos versus Bondi, basically, that the immigration judge is not, or the Board of Immigration Appeals in clear error review, is not permitted to come to different conclusions than what the immigration judge... I haven't read this recently, but I thought what the Board of Immigration Appeals said was the use of human shield example was in the civil context, and there was no evidence that that had occurred or would occur in a military setting. They stated that there was no objective evidence that this would happen, because the evidence of the record was from so-called researchers or activists that stated this would happen. Now these researchers and activists that the Board of Immigration Appeals denigrate include the United Nations Human Rights Rapporteur from Myanmar, Burma, that says that this is likely to happen to ethnic minority groups. So the Board of Immigration Appeals stated that the State Department is not specifically citing to evidence of this happening in the military context. To be precise, what the BIA says is, other mentions of human shields in the record in relation to military service comes from researchers and activists positing that recent recruits of any background may be used as such, given that the military is in a poor state and losing within the country. However, there is no objective evidence this is happening. Yes, Your Honor. So, I mean, you're talking about, it's not just activists. It's a question whether the activists referenced objective evidence as opposed to just supposition. Your Honor, but the immigration judge properly relied on this evidence in the record and assigned it the appropriate weight, given the fact that these researchers are from the U.S. Institute of Peace, the United Nations. Yes, but we have country conditions reports all the time. And when the country conditions reports say, you know, hundreds of women are being abducted and raped, or gang members are pillaging throughout the country and there's evidence that the government shows no interest in trying to control them, those are statements of facts. Those aren't positing. And, of course, we can look at the record to double-check that, but that's what they, they are not discounting it because they're activists, but because they're doing speculative conclusions themselves. Well, Your Honor, my recollection of the record evidence, and some of these reports are at ROA 590, 570, 582, is that they weren't merely positing. There was reports that this was actually happening. So, Your Honor, I would say that the Board has misstated that, but additionally, the immigration judge reviewed the record and made plausible findings of fact. The Board of Immigration Appeals disagreed with that and came to a different plausible conclusion. But in so doing, that is engaging in de novo review. The Board is not permitted to say, I disagree with the immigration judge because I come to a different plausible view of the record. That is exactly what de novo review is and not clear error. I want to briefly touch on my other points. So, first, the Board of Immigration Appeals decision was not supported by substantial evidence if this Court disagrees that it applied the wrong standard of review. As mentioned previously, the immigration judge relied on the testimony and gave it the appropriate weight. The Board of Immigration Appeals decision raises the testimony never happened. I understand that what happened to the petitioner was a long time ago, but it is still relevant to consider. It was credible testimony in support of what could happen to the petitioner. What was credible? I mean, what, that they were forced to carry some burdens for the military when they were six years old and they were allegedly conscripted and then they ran away in one day and were never found again? What does that have to do with torture? It's credible testimony that they were targeted based on their ethnicity and that this type of thing... And they were six years old. Yes, and the record shows that this type of thing is happening today and, in fact... Well, we don't care whether six-year-olds are being targeted today. Your Honor, what the regulation... And the target it is for being conscripted, and you already agreed, conscription itself is not torture. Correct, Your Honor, but what would happen to the petitioner after he was conscripted is torture. But what the regulations require is consideration of past harm, consideration of the country conditions evidence as a whole. The immigration judge properly relied on this testimony that the Board of Immigration Appeals did not even reference. And then, additionally, the record shows that 577, that ethnic minorities are targeted for recruitment, that at 594 through 595, that the ethnic minorities in that country cannot escape recruitment because they can't get the documents needed to do so. That there's forced portering of the Chin ethnic minority, that's at 652, and then 699 through 700. The abuse and mistreatment of Chin by the military is at 713 through 719, and additional evidence of forced portering of Chins is at 727. You know, if you're abusing and mistreating an ethnic group, what good does it do you to conscript them into the military where they're not likely to help the government? Well, Your Honor... That doesn't compute. Yes, Your Honor, but there is record evidence that the immigration judge seems to have relied on that ethnic minority groups are being taken off of the street in Burma. This was at Page... Well, I was just questioning the logic of these statements. Your Honor, I'm not sure why the government would do this, but there is record evidence that they are, in fact, doing this. I do see my time has concluded. You have time for rebuttal. Thank you, Your Honor.  Ms. Arthur. Okay. Good morning, Your Honors. May it please the Court, Ashley Arthur for the respondent. The petition for review should be denied for two reasons. First, the Board did not overstep its authority when it determined that the IJ clearly erred. And second, the Court, in reviewing the Board's decision, should decide that the substantial evidence supports the outcome here. I'll start with the Board's determination that the IJ clearly erred. The Board acted permissibly when it determined that the IJ clearly erred. It adequately explained how it arrived at that conclusion. At Page 7 in its decision, it cites the portions of the IJ's decision it takes issue with. At Page 8 in its decision, as my friend on the other side discussed, there are three paragraphs on Page 8 of the record where the Board goes into detail about why the record does not support what the IJ found. The IJ specifically found that the petitioner will more likely than not be conscripted into service and then singled out as a soldier for torture based on his ethnicity and religion. And this is where there is, I believe, a little discrepancy between what petitioner is arguing and what this case boils down to. The petitioner based his case on being tortured as a soldier because of his ethnicity and religion. This general background evidence regarding what's happening to civilians and even a Buddhist monk in a Buddhist majority country being mistreated and used as human shields does not help establish his claim that he will be tortured as a soldier. There's nothing in the record that describes soldiers being tortured in the military. And the Board did not err in pointing that out. The Board did not engage in gathering new evidence. It didn't develop the record. It didn't choose between disputed facts. And those are the types of cases where the court has found there's error. And that's not the case here. Even the IJ at page 117 in the record, the IJ acknowledges there's limited information in the record about the repatriation process. The IJ also notes, quote, anyone returned from Burma, end quote, would face similar risk of conscription. And again, cap protection requires an individualized risk. And petitioner did not meet his burden of proving this individualized risk of torture with such general background evidence. The court in the last was Zelaya. This is a 2022 decision. The court, quote, that the Board looked at different but undisputed record facts. Then the IJ does not establish that the Board engaged in improper fact finding, end quote. As for the second part of the IJ, it's clearly a factual finding with the dangerous assignments. The Board probably discussed the 2023 State Department report, the 2022 Religious Freedoms Report, and also discussed the other record evidence that discusses human shields. This is at page 8 in the Board's decision. I can provide exact record sites that correspond with all of these citations in the Board's decision if you want me to. But basically, the Board points out, hey, there's a Buddhist monk who was used as a human shield 11 hours away from Tin State, which is rather 11 hours away from petitioner's township. The record shows that minorities that are unspecified, we don't know their background, ethnicity, religion, were mistreated and used as human shields in states but not Tin State. And there's simply no evidence here that the military mistreats soldiers based on religion and ethnicity. And that is his claim. That is the claim he had to prove. He elected to base his CAC claim on his ethnic and religious identity. And so he's required to prove that individualized risk to support it. And petitioner simply does not do that here. With respect to these articles that quote researchers and discuss the positing of different activists about what could happen and what may happen based on what happened in the past, the Board did explain that it doesn't show that the military is presently doing that now. And CAC is a forward-looking consideration. It's predictive. We are less concerned about what's happened in the past, whether where's the evidence that's happening now or that's going to likely happen in the future. And there's nothing here. It's all about civilians. And there's nothing here that establishes soldiers are singled out for this torture. And this evidence does not establish his claim, Your Honors. I am welcoming to your questions. But basically just the possibility that conscripts could be abused because a certain activist or researcher thinks it could happen is not going to prove his  And petitioner did mention that there is evidence of this. But again, it's all about civilians. His claim is about being targeted as a soldier. And there is no evidence of that. Also, she, my friend on the other side, does mention that past harm is relevant to a CAC claim analysis. This is true. But I'd like to remind the court that here the IJ specifically found that there was no past torture here. And that militates against a finding of future torture. And that's at page 116 in the record. And I discuss it at page 27 in my brief. If there are no further questions, Your Honors, I am happy to conclude the petition for review should be denied. Thank you. Okay. Thank you. Thank you, Your Honors. I have a few points that I'd like to make as my rebuttal. But the immigration judge's acknowledgment of some gaps in the record that my colleague on the other side notes is that the government tries to use this as an example that the immigration judge's decision is clearly eroding us. However, it actually demonstrates that the judge's decision is not clearly erroneous. It would be clearly erroneous if the immigration judge ignored these gaps in the record evidence, made a conclusion without considering these gaps, and didn't explicitly consider anything to the contrary of the immigration judge's finding. However, the immigration judge's acknowledgment of particular gaps in the record shows that the immigration judge made findings of fact with consideration of all record evidence. So this actually supports a finding that the Board of Immigration Appeals engaged in an overview because it didn't consider the fact that the immigration judge did consider this, consider these gaps, and make reasonable, plausible inferences off the record. Additionally, as my opposing counsel acknowledges, CAT does require consideration of past harm. While the immigration judge found that the petitioner did not suffer torture in the past, it is still a relevant consideration, and the immigration judge noted that she would give appropriate weight to what happened to him in the past. It says 20 years ago. Yes, Your Honor. And it was not torture. Correct, Your Honor. So how can it support a fear of torture in the future? Your Honor, well, CAT also requires consideration of the country conditions evidence, which the immigration judge also relied upon. It's not that the immigration judge said, this happened to him before, it's going to happen to him again, I grant CAT. Okay, and what Ms. Arthur says is you have these links in the chain. So first of all, he's a deputy. Has he been returned to Burma? Yes, Your Honor. Okay. Has he been conscripted? He's been detained. Detained. We don't know exactly what will happen to him now, but he is detained in Burma at this time. But you do communicate with him? I communicate with his brother, who has limited communication with him. Okay. Anyway, assuming he's detained, then link number two is, he would be forcibly conscripted. Let's assume that, but that's not torture. Link number three, he would be given dangerous assignments, such as a human shield or portering. I don't know why carrying stuff is dangerous. And four, disproportionate harm amounting to torture because he is Chin, Christian, or both. All right. What evidence, objective evidence, is there that he would be given dangerous military assignments? Your Honor, the immigration judge and the record demonstrates that there is objective record evidence of this happening. What is it? Yes, Your Honor. Well, give us a record cite or just a recommendation. Yes, Your Honor. Where can we find it? The record cites for that, for the dangerous assignments, for portering, would be at record 652, 699 to 700, 713 through 719, which specifically discusses the abuse of the chin by the military. And then there's additional evidence at 727 through 728. There's more record evidence there, but these are the ones that I have specifically written down to bring to the court. And you say that supports that he would be given dangerous military assignments. Your Honor, it supports that the immigration judge is finding that he would be used as a human shield and used for portering. OK. And then what evidence that he would suffer harm amounting to torture? Your Honor, the use of human shields is torture, is properly considered torture. If the Board of Immigration Appeals believe that it was not, they could have remanded to the immigration judge for new findings of fact, which they did not do. But if you conscript an individual to use this human shield to find landmines by blowing themselves up on them and also to prevent the military from being shot at by themselves being shot at first, that is, in fact, torture. It's not mere military recruitment, like having somebody do a lap or defend a base. This is actually using them as cannon fodder to prevent the military from being shot. And you say there's objective evidence of that, which is not speculative. Your Honor, I believe that the evidence in the record is objective and that the immigration judge properly relied upon it. The immigration judge relied upon researchers from reliable institutions, and the Board of Immigration Appeals was not permitted to discount, disregard this evidence relied upon by the immigration judge or reweigh it, which the Board of Immigration Appeals did. Well, if it's speculative, it's not evidence. Your Honor, the Board of Immigration Appeals then should have remanded this case to the immigration judge for additional findings of fact in light of its finding that it was speculative rather than objective. It was not permitted to make new findings of fact and reverse the findings. If that is the proper, if that's true, that it was clearly erroneous, then send it back to the immigration judge. OK. Thank you, Your Honor. Thank you. We have your argument.